IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROSEMARY P.,                          )
                                      )
        Plaintiff,                    )
                                      )
    vs.                               )    2:18-cv-33
                                      )
COMMISSIONER OF SOCIAL                )
SECURITY,                             )
                                      )
        Defendant,                    )

MEMORANDUM and ORDER

Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the defendant's motion (ECF No. 13) will be granted, the plaintiff's motion (ECF No. 10) will be denied, and the decision of the Commissioner will be affirmed.

On January 8, 2018, Rosemary P. by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423.

On September 27, 2014 the plaintiff filed an application for disability benefits alleging that she had been disabled since August 12, 2014 (R.142-143) and benefits were denied on January 15, 2015 (R.85-89). On January 28, 2015, the plaintiff requested a hearing (R.90-91) and pursuant to that request a hearing was held on December 1, 2016 (R.32-67). In a decision dated

1

May 9, 2017, benefits were denied (R.12-27) and on May 12, 2017, reconsideration was requested (R.139-140). Upon reconsideration and in a decision dated November 24, 2017, the Appeals Council affirmed the prior determination (R.1-3). On January 8, 2018, the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act.

It is provided in 42 U.S.C. Section 405(g) that:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r., 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999).

At the hearing held on December 1, 2016, (R.32-67), the plaintiff appeared with counsel (R.34) and testified that she was fifty-four years old (R. 34), that she worked for twenty-five years as a dental assistant but the job became too strenuous (R.38-39) and that she last worked in November 2015 as a shoe salesperson (R.37).

In addition, the plaintiff testified that she has fibromyalgia (R.40); that she experiences chronic pain all over her body (R.41); that she has very poor memory or concentration ability and forgets what she is doing (R.42,54,56); that she sustained whiplash in a car accident (R.45);

2

that she suffers from depression and does nothing for about a week every three or four months (R.47), and that she experiences irritable bowel syndrome (R.51). The plaintiff also testified that she receives some relief from Oxycontin (R.41); that she is receiving mental health care (R.43); that she can stand or walk for less than an hour (R.43-44); that she cannot carry anything heavy (R.44); that she sometimes walks with a cane (R.46), and that she uses a TENS unit once or twice a week (R.55).

At the hearing a vocational expert was also called upon to testify (R.60-65). The witness classified the plaintiff's prior work as unskilled to skilled light work (R.60). When asked to assume an individual of the plaintiff's age, education and work history who was limited to performing light work who must work in a static, low stress environment that involves only simple decisions, he testified that the such a person could not perform the plaintiff's past work but that there were a large number of other jobs such an individual could perform (R.60-61, 64). However, if the individual had to be reinstructed for every shift, he testified that such an individual could not be employed (R.63).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

3

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

In a report of an eye examination conducted on November 1, 2013, no impairments were noted although eye-glasses were prescribed (R.247-253).

The plaintiff was treated at the Center for Behavioral Medicine between May 30, 2008 and May 2, 2014 where a diagnosis of depression and bi-polar disorder was made (R.254-280).

The plaintiff was treated on September 15, 2014 by Dr. Thaddeus A. Osial, Jr. who diagnosed myalgia and myositis (R.281-289).

4

The plaintiff was treated between December 31, 2013 and September 19, 2014 for weakness and dehydration (R.297-326).

The plaintiff was treated on September 26, 2014 for lumbar and knee pain. Pain medication was prescribed (R.290-296).

The plaintiff was treated at St. Margaret Hospital between May 30, 2013 and October 4, 2014 for abdominal pain with pancreatitis and chronic constipation (R.327-366).

In a report of a consultative evaluation conducted on December 17, 2014 by Tammy Fronzaglia, Ph.D., average intellectual function and an unspecified depressive disorder were noted. Specifically, she wrote "the results of the present evaluation appear to be consistent with psychiatric problems, but in itself this do[es] not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." The prognosis was guarded and any impairments were said to be mild (R.375-384).

The plaintiff attended Westarm physical therapy between October 27, 2015 and November 25, 2015 for treatment of pelvic pain, muscle weakness, voiding dysfunction and constipation (R.397-411).

In an April 7, 2016 report from the UPMC centers for rehab services a mild cognitive impairment was noted (R.385-396).

The plaintiff was treated at Monroeville Surgery between December 15, 2014 and May 16, 2016 for lumbar spinal pain with radicular pain. Epidural anesthetic/steroids were injected (R.412-476).

In a report of a work assessment dated May 20, 2016, it is noted that the plaintiff has an "excellent understanding of employer expectations and the attitudes needed to succeed in the work of work" (R.237-246).

The plaintiff received treatment at Advanced Pain Medicine between November 10, 2014 and August 22, 2016 for lumbar spinal pain. Medication was prescribed (R.477-554).

The plaintiff was treated at the Deer Lakes Medical center for unspecified fatigue between August 1, 2014 and October 5, 2016 (R.555-614).

In a physical capacity evaluation conducted on October 17, 2016, the physician's assistant observed that the plaintiff was able to perform sedentary work but also noted that on more than four days a month she would be unable to complete an eight hour work shift (R.628-629).

The plaintiff was treated by Dr. Patterson between June 5, 2014 and August 31, 2016 for dysthymia. Medication was prescribed. In a mental status evaluation completed on November 17, 2016, the doctor noted that the plaintiff often had difficulty managing stress, maintaining concentration and carrying out simple routine tasks as well as occasionally having difficulty maintaining daily living and interaction with coworkers (R.615-627, 630-631).

In a report of a neuropsychological evaluation including comprehensive testing conducted between December 7, 2016 and December 27, 2016, Matthew Page, Ph.D. diagnosed a major recurrent depressive disorder and a generalized anxiety disorder. Although detailed testing was conducted no conclusion as to employability was made (R.632-647).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974). As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> Bittel seeks to help those claimants with cases that so often fall within the spirit--but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

Based on the evidence presented, the Commissioner concluded:

The claimant meets the insured status requirements of the Social Security Act through March 31, 2020.

The claimant has not engaged in substantial gainful activity since August 12, 2014, the alleged onset date…

The claimant has the following severe impairments: osteoarthritis; degenerative disc disease; irritable bowel syndrome; rheumatoid arthritis; chronic pain; fibromyalgia; dysthymia; depression, bipolar disorder and anxiety…

While the claimant alleged cognitive disorder, neuropsychological evaluation indicated that her concerns with short-term memory likely reflected initial inattention and encoding difficulty, rather than a disorder in memory retrieval. For this reason, and because there is a lack of clinical or diagnostic findings relative to the alleged cognitive disorder, the undersigned finds that it is not a medically determinable impairment. However, any alleged limitations are appropriately accommodated in the below residual functional capacity.

The undersigned finds that all other impairments found in the record, alone or in combination, are nonsevere or not medically determinable because they have been responsive to treatment, did not require significant medical treatment, have cause no more than minimally vocationally relevant limitations, have not lasted or are not expect to last at a "severe" level for a continuous period of 12 months or expected to result in death, or have not been properly diagnosed by an acceptable medical source.

The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments …

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined ... except she: can occasionally climb ramps and stairs, but never ladders, ropes and scaffolds; can frequently balance, stoop, kneel and crouch, but never crawl; is limited to performing routine, repetitive tasks … must work in a static, low stress environment that involves only simple decisions and infrequent change, changes that did not occur would be explained and/or demonstrated and could be learned in 30 days or less; cannot do work that is fast-paced or has strict production or time quotas; and can have occasional public interaction…

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the … alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record …Accordingly, these statements have been found to affect the claimant's ability

to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence…

Physical examinations also documented normal range of motion throughout; no musculoskeletal tenderness or deformity; no synovitis; no edema; a soft, nontender, and nondistended abdomen; normal muscle tone and bulk in the upper and lower extremities bilaterally; normal strength in the upper and lower extremities bilaterally; normal sensation; normal motor function; normal deep tendon reflexes; normal coordination; and normal gait and station. While there were complaints of fatigue and pain by the claimant in the record, she generally appeared alert and oriented and in no distress upon examination… The record indicates that the claimant received treatment for the above impairments, which included therapeutic injections, lumbar facet nerve blocks, lumber rhizotomy, and [pain] medication … The record further indicates that such treatment resulted in at least partial symptomatic improvement…

The record also shows diagnoses of dysthymia, depression, bipolar disorder, and anxiety. At times, mental status examinations documented abnormal affect (flat), restless motor behavior, mildly impaired recent and remote memory skills, mildly impaired attention and concentration, poor insight, and fair judgment. However, mental status examinations also documented normal mood and affect, good grooming, cooperative behavior, adequate social skills, normal eye contact, normal speech, normal thought processes (logical and goal-directed), normal thought content, normal orientation, normal language, intact recent and remote memory, good attention and concentration, appropriate general fund of information, and good insight and judgment…

[T]he claimant appears to have underlying medical determinable impairments that could reasonably cause some symptomatology. However, the pivotal question is not whether such symptoms exist, but whether those symptoms occur with such frequency, duration or severity as to reduce the claimant's residual functional capacity… to preclude all work activity on a continuing and regular basis. In this case, the objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in symptoms of such a severity or frequency as to preclude the range of work described above. Rather, the above findings support the residual functional capacity that has been determined in this decision…

[The daily] activities suggest that the claimant can function within the above residual functional capacity…The record reflects that the claimant looked for work during the period under adjudication and went on many interviews. This may be an indication that her symptoms are less limiting than alleged and that she feels she retains some capacity to work. The record also reflects that the claimant received unemployment compensation during the alleged period of disability. This required the claimant to certify that she was willing and able to engage in work activity, which is inconsistent with a claim for disability.

> As for the opinion evidence, the claimant's physician assistant … completed a medical source statement in October 2016. She indicated the claimant could perform sedentary work, but would often require additional breaks during a workday. She also indicated that the claimant experienced four or more "bad" days per months. The undersigned gives this opinion little weight because it is not fully supported by the objective medical findings, including physical examinations documenting normal range of motion throughout, no musculoskeletal tenderness or deformity, no synovitis, normal strength, normal motor function, and normal gait and station. The claimant stated in medical records that she took a trip to the Dominican Republic, did volunteer work, and helped plan her daughter's wedding, which suggests that her symptoms are less limiting…
>
> The State Agency psychological consultant … determined that the claimant could perform simple, routine, repetitive tasks in a stable environment, make simple decisions, sustain a work routine without special supervision, and otherwise meet the basic mental demands of competitive employment on a sustained basis. The undersigned gives great weight to [this] opinion …
>
> The claimant was born on December 10, 1962 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date…
>
> The claimant has at least a high school education …
>
> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform…
>
> The claimant has not been under a disability, as defined in the Social Security Act, from August 12, 2014 through the date of this decision… (R.17- 27).

The record demonstrates the plaintiff experiences both physical and mental problems. While the physical complaints do impose some limitation on her ability to work there is no demonstration made that they prevent her from engaging in all forms of work as testified to by the vocational expert. Her treating psychiatrist concluded that she would have stress management problems but his conclusions are in the form of a check-off rather than a description of a basis for his conclusions. The use of an unsupported check-off box is weak support for any

conclusions. Smith v. Astrue, 359 Fed. Appx. 313, 316 (3d Cir. 2009). The neuropsychologist's report supports the contention that the plaintiff suffers from a general anxiety disorder but there is no demonstration that this condition is disabling. Rather, the record reflects that to a very large extent her problems are controlled by medication.

The plaintiff also argues that the administrative law judge should have considered her to be of "advanced age" rather than of "closely approaching advanced age" in applying the applicable grid.[1] Although the regulations do provide some flexibility in determining which grid to apply, it is also true that the plaintiff was seven months away from the advanced age category and for this reason not entitled to the waiver. Roberts v. Barnhart, 139 Fed. Appx. 418, 420 (3d Cir. 2005) (there is no "authority extending the benefits of a 'borderline' age determination to persons …who are within five to six months" of their 55th birthday). Accordingly, plaintiff is not entitled to be considered a borderline person at the time of the decision was rendered.

Since the burden of demonstrating entitlement to benefits rests on the plaintiff and she has failed to make this showing, she is not entitled to benefits.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. McMann v. Babcock and Wilcox, 869 F.3d 240 (3d Cir. 2017). In the instant case, there are no material factual issues in dispute, and the Commissioner's conclusion is supported by substantial evidence. For this reason, the defendant's motion for summary judgment (ECF No. 13) will be granted, the plaintiff's motion for summary judgment (ECF No. 10) will be denied, and the decision of the Commissioner will be affirmed.

An appropriate Order will be entered.

---

[1] Closely approaching advanced age describes a person who is age 50-55 while a person of advanced age is age 55 or older. 20 C.F.R. Ch. III §404.1563(d) and (e).

11

s/ Robert C. Mitchell
United States Magistrate Judge

Filed: July 25, 2018

ORDER

AND NOW, this 25th day of July, 2018, for the reasons set forth in the foregoing Memorandum, the Plaintiff's motion for summary judgment (ECF No.10) is DENIED; the Defendant's motion for summary judgment IECF No. 13) is GRANTED, and the decision of the Commissioner is AFFIRMED.

s/ Robert C. Mitchell
United States Magistrate Judge